UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHERESHA M. PITTS,

                            Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              14-CV-317S
CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.


1.      Plaintiff Sheresha M. Pitts challenges an Administrative Law Judge's
("ALJ") determination that she is not disabled within the meaning of the Social Security
Act ("the Act"). Plaintiff alleges that she has been disabled since May 16, 2008, due to a
pulmonary embolism, pulmonary hypertension, shortness of breath, sleep apnea, right
side neuropathy, chest-wall pain, migraine headaches, and obesity. Plaintiff contends
that her impairments have rendered her unable to work. She therefore asserts that she
is entitled to disability benefits under the Act.

2.      On May 18, 2008, Plaintiff submitted an application for Title II Social
Security Disability ("SSD") benefits. Her claim was initially denied on September 22,
2011. Pursuant to Plaintiff's request, ALJ Donald T. McDougall held an administrative
hearing on October 26, 2008, at which Plaintiff appeared with counsel and testified. At
that hearing, an impartial vocational expert ("VE"), Jay Steinbrenner, also testified. On
November 29, 2012, ALJ McDougall rendered a Notice of Decision denying SSD

benefits to Plaintiff.[1] On April 18, 2014, the Appeals Council denied her request for review. Plaintiff filed the current action on April 25, 2014, challenging Defendants' final decision.[2]

3.     On September 29, 2014, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 9). The Commissioner followed suit on November 21, 2014. (Docket No. 11). This Court took the motions under advisement without oral argument.

4.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.   See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.   See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.   See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[1] Plaintiff filed a prior SSD application on September 12, 2008, also alleging a disability onset date of May 16, 2008. That claim was denied on March 12, 2009, but Plaintiff did not file a written appeal. Although this application is not at issue, much of the medical record from that claim was included in the record for the current claim.

[2] The ALJ's April 18, 2014 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.      This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which

is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curium); see also Rosa v.

Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.    While the claimant has the burden of proof as to the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this

inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the

claimant's job qualifications by considering his physical ability, age, education, and work

experience.   Second, the Commissioner must determine whether jobs exist in the

national economy that a person having the claimant's qualifications could perform.  See

42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458,

460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.    In this case, the ALJ made the following findings with regard to the five-

step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity

since the alleged onset of her disability (R. at 15);[3] (2) Plaintiff's pulmonary embolism,

pulmonary hypertension, shortness of breath, sleep apnea, right side neuropathy, chest-

wall pain, migraine headaches, and obesity constitute "severe" impairments within the

meaning of the Act (R. at 15); (3) Plaintiff's impairment or combination of impairments

---

[3] Citations to the underlying administrative record are designated as "R."

does not meet the criteria necessary for finding a disabling impairment under the regulations (R. at 16); (4) Plaintiff was capable of performing past relevant work in customer service (R. at 22) since she retained the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), except that she needs to be able to sit or stand at will every 30 minutes, cannot be exposed to extremes of temperature, no exposure to concentrated levels of fumes, dusts, gases or other respiratory irritants, no overhead reaching with the right hand/arm, and no hazards or work around dangerous moving machinery (R. at 17); and (5) though Plaintiff could perform her past work, thus making this step superfluous, the ALJ concluded that given Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she can perform in the customer service industry. (R. at 22). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his decision, November 29, 2012. (R. at 24).

10.    Plaintiff raises four challenges to the ALJ's decision. Plaintiff first argues that the ALJ improperly rejected her primary physician's opinion. Plaintiff's primary physician was Dr. Sonal Patel. (R. at 21). In a letter dated October 29, 2012, Dr. Patel advised Plaintiff to keep both of her legs elevated to prevent swelling. (R. at 21, 1125). Dr. Patel wrote another letter on December 3, 2012, further stating that Plaintiff was to keep her legs elevated to prevent swelling and possible recurring of clots and chest pain.  Plaintiff contends that the ALJ violated the "treating physician's rule," by failing to afford proper weight to Dr. Patel's opinion that she must keep her legs elevated.[4] Neither letter, however, stated that Plaintiff was unable to work or must keep her legs

---

[4] "The 'treating physician's rule is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

elevated at all times. (R. at 1125, 1132). Plaintiff argues that the ALJ is required to explain his reasons for discounting a treating physician's opinion, which ALJ McDougall allegedly neglected to do. In rendering his decision, ALJ McDougall considered Dr. Patel's October 2012 letter but did not give it controlling weight because he found it inconsistent with Plaintiff's own admissions. Significantly, Dr. Patel makes no mention of ongoing treatment for lower extremity problems nor indicates that Plaintiff was explicitly unable to work. (R. at 21, 22, 1125).

11.    According to the "treating physician's rule," the ALJ will give more weight to the treating physician if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). Factors in paragraphs (c)(2)(i)[5] and (c)(2)(ii)[6] will be applied when a treating source's opinion is not given controlling weight. 20 C.F.R. § 404.1527(c)(2). When making a determination, the ALJ may "rely on what the [medical] record says, but also on what it does not say." Johnson v. Astrue, No. 09 Civ. 6017(RMB)(JCF) 2010 WL 5573632, at *11 (S.D.N.Y. Dec. 3, 2010) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d. Cir. 1983)). Having reviewed the ALJ's decision and the record, this Court detects no reversible error in the ALJ's consideration of Dr. Patel's opinion that Plaintiff should keep her legs elevated.

---

[5] 20 C.F.R. § 404.1527(c)(2) (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.
[6] 20 C.F.R. § 404.1527(c)(2) (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion.

As an initial matter, the record reflects that Dr. Patel's recommended treatment of elevating Plaintiff's legs lacks any indication that Plaintiff can no longer work. For example, Dr. Patel acknowledges that Plaintiff receives treatment for medical problems. (R. at 1125). Moreover, he mentions that Plaintiff was being treated for recurrent pulmonary embolism ("PE"), migraines, upper extremity weakness, and depression, which were all stable. (R. at 1125). Notably, Dr. Patel's October 2012 letter does not indicate that Plaintiff was explicitly unable to work, even though Dr. Patel mentions that Plaintiff should keep her legs elevated to possibly prevent further swelling. (R. at 21, 1125). In addition, there is no mention of treatment for lower extremity impairments. Id.

Furthermore, on December 3, 2012, Dr. Patel evaluated Plaintiff and again recommended that Plaintiff continue elevating her legs to prevent swelling as well as to reduce the likelihood of her clots and chest pain recurring. (R. at 1132). Dr. Patel writes that this treatment has been ongoing since May 2008. Id. But Dr. Patel was not Plaintiff's doctor in May 2008, and treatment to keep her legs elevated was not implemented until October 29, 2012, some four years later. (R. at 269-307). Neither the October 29, 2012 letter nor the December 3, 2012 letter indicates when Plaintiff needed to elevate her legs or conclude that Plaintiff could not work. Dr. Patel's statement regarding leg elevation relates to Plaintiff's history of PE (i.e., the prevention of blood clots forming in the legs that could travel to the lungs).  The ALJ specifically discounted this portion of Dr. Patel's letter because Plaintiff had not actually experienced any PEs since 2010. (R. at 21, 1132). The ALJ provided a detailed history of the medical evidence relating to PE, illustrating that this condition was essentially resolved by the time Dr. Patel drafted his letter. (R. at 18-22). Thus, the ALJ fully demonstrated that Dr.

Patel's bare assertion was both unsupported by and inconsistent with the record as a whole. See 20 C.F.R. § 404.1527(c)(2)-(4).

The ALJ acknowledged that Plaintiff had experienced a PE post-partum in May 2008, though it was unclear whether she experienced a second PE in October 2008. (R. at 18-19, 270, 273, 279, 291-94). As the ALJ noted, when Dr. Logue examined Plaintiff in September of 2009, other than obesity, her examination was entirely unremarkable. (R. at 19, 273). The ALJ acknowledged that Plaintiff experienced another PE in August of 2010, while off the medication Coumadin, but even at that time, Doppler studies of Plaintiff's legs were negative, evidencing no clots. (R. at 19, 310). Under the circumstances, it was not improper for the ALJ to find that Dr. Patel's assessment was not entitled to controlling weight. (R. at 17-22). For the foregoing reasons, this Court finds that the ALJ's consideration of Dr. Patel's opinion was supported by substantial evidence.

12.    Plaintiff next argues that the ALJ improperly evaluated her credibility. "The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). A claimant's testimony is only credited "to the extent that alleged limitations can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 CFR § 404.1529(c)(4).

13.    Here, ALJ McDougall considered the medical evidence (physical and mental), Plaintiff's activities of daily living, and her work record in determining that "the claimant's statements concerning the intensity, persistence, and limiting effects of these

symptoms are not credible to the extent they are inconsistent with the [RFC]." (R. 22–23.) With some physical limitations, Plaintiff is still functional in daily living activities such as caring for her personal needs, caring for her children, preparing meals, laundry, cleaning, cooking, shopping, and driving a car. (R. at 15). Moreover, by visiting family, going out to lunch and church, meeting with a church support group, traveling to Nashville by plane and staying in hotel for five days, the ALJ concluded that Plaintiff was "mildly" limited, but could still perform residual functional activities, even though some of those activities take longer to accomplish. (R. at 16). This Court finds no error in that determination, which is consistent with Plaintiff's daily-living testimony.

14.    Plaintiff's third challenge is that the ALJ's residual functional capacity assessment is not based on substantial evidence. The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except that she needs to be able to sit or stand at will at least every 30 minutes; cannot be exposed to extreme temperatures; no exposure to concentrated levels of fumes, dusts, gases or other respiratory irritants; no overhead reaching with the right hand/arm; and no hazards or work around dangerous moving machinery (R. at 17). Additionally, pursuant to 20 C.F.R. § 404.1565 and 20 C.F.R. § 416.965, the ALJ found Plaintiff capable of performing her past relevant work, which does not require the performance of work-related activities precluded by Plaintiff's RFC. (R. at 22-24).

15.    In making an RFC assessment, the ALJ "must identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p at 2; see also 20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)-(d). The ALJ must specify which functions the claimant is able to perform

and may not "simply make conclusory statements regarding [the claimant's] capacities." LaPorta v. Browne, 737 F. Supp. 180, 183 (N.D.N.Y. 1990). Then, after assessing the claimant's functional limitations and abilities, the ALJ categorizes the RFC into exertional levels of work, e.g., "sedentary, light, medium, heavy and very heavy." SSR 96-8p at 2.

16.    Here, this Court finds that the ALJ complied with the requirements for evaluating Plaintiff's RFC. The ALJ obtained detailed information regarding the requirements of Plaintiff's former job as a customer service representative, in accordance with SSR 82-62. The ALJ considered the entire record and determined that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. §404.1567(b),[7] with the limitations noted above.

The ALJ properly relied on the testimony of the VE that a hypothetical individual with Plaintiff's specific limitations could perform a customer service job with her RFC as it is generally performed in the national economy. (R. at 22, 23); 20 C.F.R. § 404.1560(b)(2). Plaintiff bears the burden of proof through step four, and given her inability to meet this burden, the ALJ correctly concluded that Plaintiff was not disabled at step four.[8] (R. at 22-23); See Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003); Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981) (Plaintiff has the burden to show an inability to return to her past relevant work, both as she actually performed it and as it is generally performed). All of this is consistent with the requirements of Plaintiff's prior

---

[7] Under the Commissioner's regulations, light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. Id.; Social Security Ruling ("SSR") 83-10.

[8] By extension, any possible error by the ALJ in not adequately assessing whether Plaintiff could perform her past relevant work, as actually performed, is harmless, as it would have no impact on the outcome of Plaintiff's case. See Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010).

work and a "light work" categorization, with the limitations identified by the ALJ. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). Accordingly, this Court finds that the ALJ's RFC determination is supported by substantial evidence and rejects Plaintiff's third challenge.

17.     Lastly, although the ALJ properly decided Plaintiff's case at step four and was not required to continue the analysis, he proceeded to make an alternate finding at step five. (R. at 23-24). Based on Plaintiff's age, education, past relevant work experience, and RFC, the VE identified two occupations under the Dictionary of Occupational Titles ("DOT") that Plaintiff could perform: bank teller and receptionist. (R. at 23, 24). A bank teller is identified as DOT job number 205.362-026, a skilled job requiring light exertion, as it is generally performed in the national economy. (R. at 23, 57). The VE further elaborated that a person in this position would generally be familiar with opening and closing accounts, handling transactions, and offering bank services. (R. at 60). A receptionist is identified as DOT job number 237.367-038, a semi-skilled, sedentary job requiring light exertion, as it is generally performed in the national economy. (R. at 24, 60, 61).  The VE testified that both jobs would allow an individual to alternate from sitting to standing, per his observations of the job performed. (R. at 24). In accordance with 20 C.F.R. § 404.1560(b)(2), the ALJ properly relied on the VE's testimony. (R. at 57, 59).

18.     Plaintiff challenges the ALJ's step-five analysis, stating that it was flawed for several reasons. Plaintiff first argues that the ALJ did not identify the conflicts between the VE's testimony and the DOT, in accordance with SSR 00-4p. It is not error for the ALJ to rely on the VE's testimony so long as there is no actual conflict between the VE testimony and the Dictionary of Occupational Titles ("DOT"). Pahl v. Colvin, No.

12-CV-316S, 2013 WL 3761545, at *6 (W.D.N.Y. July 16, 2013). Here, no such conflict existed, because the DOT job description does not address the availability of a sit/stand option. Thus, this does not contradict the vocational expert's testimony, which endorsed such an option. See Wellington v. Astrue, No. 12 CIV. 3523 KBF, 2013 WL 1944472, at *4 (S.D.N.Y. May 9, 2013).

Second, Plaintiff argues that the VE did not provide any scientific methodology or other reliable source to support his conclusion that the job of bank teller could be performed with a sit/stand option. At the time of the VE's testimony regarding the bank teller position and the sit/stand option, the VE properly identified the general source of his information (DOT data), then further extrapolated from existing data, based on his own professional experience, to draw expert conclusions regarding the impact of a sit/stand option. (R. at 60, 62-63). See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 450 (2d Cir. 2012) (ruling that it is enough that a VE identify the sources he generally consulted to determine his job numbers (i.e., the DOT) noting that there is no applicable case law or regulation requiring a VE to identify with greater specificity the exact source of his information) (quoting Galiotti v. Astrue, 266 F. App'x 66 (2d Cir. 2008)). The VE's sufficiently substantiated testimony provides substantial evidence to support the ALJ's decision. See, e.g., Durante v. Colvin, No. 3:13-cv-1298 (HBF), 2014 WL 4852881, at *26 (D. Conn. Aug. 7, 2014) (citing Brault and holding that the ALJ properly relied on VE testimony regarding the number of jobs available to a hypothetical individual who required a sit/stand option, where the testimony was based on the DOT, as supplemented by the VE's general activity in job placement services and at disability insurance benefits hearings).

Finally, the VE was correct in determining job numbers for the position of receptionist. Plaintiff argues that the VE should have provided the job numbers only for "medical receptionist" instead of the more general category of "receptionist" based on Plaintiff's prior work. (R. at 60-61). The VE explained that Plaintiff's experience in inputting data, doing intakes, and gathering information would, in fact, also translate to the general receptionist position. (R. at. 65). Where, as here, substantial evidence supports the findings upon which the hypothetical posed to the VE was based, the ALJ properly relied on the VE's testimony in finding that Plaintiff could perform jobs existing in significant numbers in the national economy. See McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014); Dumas, 712 F.2d at 1553-54. Additionally, the ALJ appropriately relied upon the VE's testimony when evaluating and determining skills that Plaintiff had acquired through her past relevant work that she could use in another type of semi-skilled position. See 20 C.F.R. § 404.1565(a).

19.     After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision, including objective medical evidence and medical opinions contained therein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleading (Docket No. 9) is

DENIED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.


Dated: June 19, 2015
      Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge
